IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CLIVE MUIR, | ) |
| | ) |
|     Plaintiff, | ) |
|   v. | ) |
| | )   No. 1:11-cv-282 |
| WINSTON-SALEM STATE UNIVERSITY, | ) ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This case arises out of a dispute between Plaintiff Clive Muir and his former employer, Winston-Salem State University ("WSSU"). Mr. Muir alleges that due to his national origin, WSSU discriminated against him, retaliated against him for complaining of discrimination, and subjected him to a hostile work environment, all in violation of Title VII of the Civil Rights Act of 1964, <u>as amended</u>, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). The matter is now before the Court on WSSU's Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. # 12). For purposes of this Motion, the two central issues in this case relate to Title VII's administrative resolution scheme: (1) whether Mr. Muir's charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") was timely filed, and (2) whether the allegations in Mr. Muir's complaint exceed the scope of his EEOC charge. For the reasons discussed below, WSSU's Motion to Dismiss (Doc. #12) will be treated as a Rule 12(c) motion for judgment on the pleadings, and will be GRANTED.

I.

Taking all facts from the Complaint in the light most favorable to Mr. Muir, in conjunction with the facts as stated in his EEOC charge,[1] the material facts are as follows. Mr. Muir began his employment with WSSU in August of 2005. Compl. (Doc. #4) ¶ 4. In addition to his role as an assistant professor, he served as Director of WSSU's Leadership Institute. Id. ¶¶ 4-5. In 2006, WSSU removed Mr. Muir from this directorship, allegedly in retaliation for his objection to national origin discrimination. Id. ¶ 5. In particular, Mr. Muir contends that he was demoted after he reported a colleague's offensive comment to the dean in 2005.[2] EEOC Charge (Dock. #12-4). Mr. Muir further alleges that after he was hired, he began to experience a hostile work environment, Compl. (Doc. #4) ¶ 4, in that he was "placed under greater scrutiny" than his American colleagues and was "denied . . . important communication from his peers and management team." Id. ¶ 6.

Although the date of his application does not appear in the materials before the Court, it is clear that at some point during his employment with WSSU, Mr. Muir applied for tenure and promotion. WSSU denied his request, informing Mr.

---

[1] As discussed in more detail below, it is concluded that Mr. Muir's EEOC charge, attached as Ex. 4 to WSSU's Motion to Dismiss (Doc. #12-4), may be considered in deciding the motion. See, e.g., Alexander v. City of Greensboro, No. 1:09-cv-934, 2011 WL 13857, at *8 (M.D.N.C. Jan. 4, 2011) (considering EEOC charge on a Rule 12(b)(6) motion).

[2] Mr. Muir's colleague allegedly commented that Mr. Muir was "not African American." EEOC Charge (Dock. #12-4).

Muir of its decision in December 2008. EEOC Charge (Dock. #12-4).³ Also in December 2008, WSSU communicated to Mr. Muir that his three year term appointment would expire on May 18, 2010. Id. In response, Mr. Muir filed "several appeals," challenging both his non-reappointment and his denial of tenure. Id. Mr. Muir's final appeal took place on December 24, 2009, and WSSU informed him on June 11, 2010 that his appeal was denied. Id. Accordingly, Mr. Muir's final day of employment with WSSU was May 18, 2010. Id.; Compl. (Doc. #4) ¶ 8.

As a result of his termination, Mr. Muir filed a charge in writing with the EEOC on August 28, 2010. Id. ¶ 13; EEOC Charge (Dock. #12-4). This charge alleges that Mr. Muir was denied reappointment, tenure, and promotion based on his national origin, and that his objection to his colleague's offensive comment influenced WSSU's decision in those matters. EEOC Charge (Dock. #12-4). The EEOC issued Mr. Muir a right to sue letter on December 14, 2010. Compl. (Doc. #4) ¶ 13. Mr. Muir then filed suit in state court on March 14, 2011, claiming national origin discrimination and retaliation in violation of Title VII and N.C. Stat. Gen. § 143-422.1 ("NCEEPA"), and seeking punitive damages and injunctive relief.⁴ Id. ¶¶ 12, 15-21. WSSU timely removed the case to this Court. (Doc. #2).

---

³ In 2008 and 2009, American WSSU professors who were allegedly similarly situated to Mr. Muir received tenure. Compl. (Doc. #4) ¶ 7; EEOC Charge (Dock. #12-4).

⁴ WSSU initially filed a Motion for Partial Dismissal, seeking to dismiss the discrimination and retaliation claim insofar as it pled a cause of action under NCEEPA. (Doc. # 7). Mr. Muir has conceded that his claim arises solely under Title VII and that he is not pursuing a state law claim. (Doc. # 11). In view of this concession, and because WSSU's later Motion to Dismiss will be granted, the Motion for Partial Dismissal will be denied as moot, and the merits of WSSU's arguments need not be addressed. Cf. Dai v. Univ. of N.C., at Chapel Hill, No. 1:02CV224, 2003 WL 22113444, at *4-*6 (M.D.N.C. Sept. 2, 2003) (describing limited circumstances in which plaintiffs may pursue claims

3

On May 16, WSSU filed its Answer, which included affirmative defenses invoking, *inter alia*, FED. R. CIV. P. 12(b)(6) and Plaintiff's failure to timely exhaust administrative remedies. (Doc. #9).

WSSU subsequently filed a Motion to Dismiss the Complaint in its entirety. (Dock. #12). WSSU seeks dismissal on two grounds, pursuant to Rule 12(b)(1) and Rule 12(b)(6). First, WSSU contends that Mr. Muir's claims are time-barred due to his failure to timely file a charge with the EEOC. (Doc. #13). Second, WSSU argues that Mr. Muir's hostile work environment claim exceeds the scope of his EEOC complaint, and that it is therefore barred from consideration by this Court. Id. Mr. Muir opposes the motion, arguing that his EEOC charge was filed within 180 days of WSSU's "final decision" upon appeal, and that his hostile work environment claim does not exceed the scope of the charge. (Doc. #15). These contentions are considered below.

III.

Before the merits of the parties' arguments may be addressed, a threshold issue not addressed by the parties concerns whether Rule 12(b)(1) or Rule 12(b)(6) governs this Court's analysis. For purposes of this case, the distinction between a Rule 12(b)(1) motion - challenging subject matter jurisdiction - and a motion under Rule 12(b)(6) - challenging plaintiff's failure to state a claim - is not merely semantic. First, if a Rule 12(b)(1) motion were proper, evidence outside the pleadings, such as the exhibits to WSSU's Motion to Dismiss, could be considered

---

under NCEEPA).

without converting the motion into a summary judgment motion. See Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). A court's ability to consider matters outside the pleadings with respect to a Rule 12(b)(6) or 12(c) motion, on the other hand, is more circumscribed. FED. R. CIV. P. 12(d); see also Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999). Second, a jurisdictional requirement, unlike a limitations period, divests a court of its ability to hear the case and cannot be tempered by equitable doctrines such as estoppel or tolling. Cf. Zipes v. Trans World Airlines Inc., 455 U.S. 385, 393 (1982). Finally, in the event that a defendant challenges the jurisdictional allegations of the complaint, the Rule 12(b)(1) analysis does not afford the plaintiff the benefit of the presumption, applied in Rule 12(b)(6) cases, that all facts alleged are true. Adams, 697 F.2d at 1219.

The Title VII enforcement scheme, which is discussed in more detail below, requires that a litigant file a charge of discrimination with the EEOC before proceeding with a federal suit. 42 U.S.C. § 2000e-5(e)(1) (2000). A plaintiff's failure to exhaust administrative remedies through this scheme with respect to any Title VII claim deprives a federal court of subject matter jurisdiction over that claim. Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009). A plaintiff's failure to meet the timing requirements of the administrative scheme, however, does not deprive the court of jurisdiction. Zipes, 455 U.S. at 393; Jones, 551 F.3d at 300 n.2. Nonetheless, as with any limitations period, an untimely lawsuit may be procedurally barred. Cf. Zipes, 455 U.S. at 393.

Because WSSU's Motion challenges the timeliness of Mr. Muir's EEOC charge, a Rule 12(b)(1) motion is not the proper vehicle for its argument. See Alexander, 2011 WL 13857, at *6.[5] Accordingly, WSSU's argument should be considered under Rule 12(b)(6) and not Rule 12(b)(1). A Rule 12(b)(6) motion would be untimely at this juncture, however, so WSSU's motion must be considered as a motion for judgment on the pleadings pursuant to Rule 12(c). See Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009) (construing untimely Rule 12(b)(6) motion as a 12(c) motion).

III.

Having concluded that Rule 12(c) governs WSSU's Motion to Dismiss, this Court must now determine whether the documents attached to the motion may be considered without converting the motion into one for summary judgment. See FED. R. CIV. P. 12(d). In general, courts may not consider documents outside the pleadings on a Rule 12(b)(6) or Rule 12(c) motion unless the document is integral to and relied upon in the complaint, and its authenticity is not challenged. See, e.g., Phillips, 190 F.3d at 618; New Beckley Min. Corp. v. Int'l Union, United Mine Workers of America, 18 F.3d 1161, 1164 (4th Cir. 1994) (holding that the district court did not err in considering document that plaintiff "referred to … in its complaint to justify its cause of action"). When a plaintiff has relied upon a

---

[5] Mr. Muir's failure to exhaust his administrative remedies as to his hostile work environment claim would, however, be the proper subject of a 12(b)(1) motion. See Davis v. North Carolina Dep't of Corr., 48 F.3d 134, 138 (4th Cir.1995) (a plaintiff's failure to exhaust administrative remedies deprives court of subject matter jurisdiction). Accordingly, Mr. Muir's hostile work environment claim is considered independently of his claims of discrete acts of discrimination.

document in his complaint and therefore has notice of the contents of the exhibit offered by a defendant, the concerns that Rule 12(d) is designed to address are less salient. Norman v. Tradewinds Airlines, Inc., 286 F. Supp. 2d 575, 580 (M.D.N.C. 2003) ("The underlying concern in cases applying this rule is to protect a plaintiff who might not have notice of (and an opportunity to fully respond to) facts newly introduced by the defendant in conjunction with motion of dismissal.").

Applying these principles, other courts within the Fourth Circuit have considered EEOC charges attached to motions to dismiss, where plaintiffs relied upon those documents in their complaints and did not contest the exhibits' authenticity. See Alexander, 2011 WL 13857, at *6-*8; Cohen v. Sheehy Honda of Alexandria, Inc., No. 1:06-CV-441, 2006 WL 1720679, at *2 (E.D. Va. Jun. 19, 2006) (EEOC charge was integral to complaint because plaintiff "would have been unable to file a civil action without first filing such a charge").

Mr. Muir's response to WSSU's motion does not contest the authenticity of any of WSSU's exhibits. Nonetheless, Exhibits 1, 2, and 3, letters from WSSU to Mr. Muir regarding its employment decisions, will not be considered. (Dock. ##12-1; 12-2; 12-3). Mr. Muir does not rely upon any of these letters (nor does he even reference a letter from WSSU at all) in framing his Complaint. The letters are in no sense "integral" to Mr. Muir's Complaint nor necessary to stating his claim; they therefore cannot be considered without converting WSSU's motion into one for summary judgment. On the other hand, the EEOC charge (Doc. #12-4) and the right to sue letter (Doc. #12-5) are explicitly referenced and relied upon in the

7

Complaint. Compl. (Doc. #7) at ¶ 13. Indeed, Mr. Muir could not have brought suit without first satisfying the administrative prerequisites evidenced by the charge and the right to sue letter. Only Mr. Muir's EEOC charge will be considered, however. Though the right to sue letter could fairly be considered without violating the policies underlying Rule 12(d), its probative value is minimal and it will be disregarded for purposes of this decision.[6] As such, in deciding WSSU's Motion to Dismiss, only Exhibit 4 to the Motion (Dock. #12-4), Mr. Muir's EEOC charge, will be considered along with the allegations in the Complaint.

IV.

The same standard applies to both motions for judgment on the pleadings under Rule 12(c) and motions to dismiss under Rule 12(b)(6). Walker, 589 F.3d at 139. The court accepts as true the factual allegations in the complaint, and draws all reasonable factual inferences in favor of the plaintiff. Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002). A court does not, however, "accept as true unwarranted inferences, unreasonable conclusions, or arguments," Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000), and "need not accept as true any allegations in the complaint . . . that are directly contradicted by the exhibits." Norman, 286 F. Supp. 2d at 581; see also 5C WRIGHT ET AL. FED. PRAC. & PROC. CIV. § 1368, at

---

[6] The Fourth Circuit, while leaving the admission of EEOC probable cause determinations (i.e., analogous documents) to the province of the District Courts, has cautioned that the probative value of such determinations is generally outweighed by their prejudicial effect. See Goldberg v. B. Green and Co., Inc., 836 F.2d 845, 848 n.4 (4th Cir. 1988). No weight is given here to the EEOC's conclusion, expressed (without further explanation or analysis) in the right to sue letter, that Mr. Muir's charge was untimely.

245 (3d ed. 2004).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (plaintiff must articulate facts that "show a plausibility of entitlement to relief") (internal citations and quotations omitted). A plaintiff must therefore plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. Accordingly, while a plaintiff need not plead facts that constitute a prima facie case, his "[f]actual allegations must be enough to raise a right to relief above the speculative level." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (quoting Twombly, 550 U.S. at 555). A 12(c) motion is therefore appropriate when a plaintiff's claims are barred by a statute of limitations. See, e.g., 5C WRIGHT ET AL. FED. PRAC. & PROC. CIV. § 1367, at 211 (3d ed. 2004).

## VI.

Mr. Muir's claims arise solely under Title VII.[7] Under Title VII, it is an unlawful employment practice to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms,

---

[7] Counts II and III of Mr. Muir's Complaint (punitive damages and declaratory judgment) are predicated upon the alleged Title VII violation. See Compl. (Doc. # 4).

9

conditions, or privileges of employment, because of such individual's. . . national origin." 42 U.S.C. § 2000e-2(a)(1) (2000). This provision encompasses discrete acts of discriminatory termination, as well as hostile work environment claims. See E.E.O.C. v. Central Wholesalers, Inc., 573 F.3d 167, 174 (4th Cir. 2009). It is also an unlawful employment practice for an employer "to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a) (2000).

The allegations in the Complaint encompass two different types of Title VII violations: discrete events, such as non-reappointment and denial of tenure, and a pattern of conduct, i.e., the alleged hostile work environment. Each is considered in turn.

A.

Before an aggrieved employee can pursue a lawsuit for a violation of Title VII, he or she must first file a charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(e)(1) (2000). The charge must be filed within 180 days after the unlawful employment practice occurred, unless the claimant has instituted proceedings with a state or local agency. Id. § 2000e-5(e)(1).[8] "[T]he time for filing a charge of employment discrimination with the [EEOC] begins when the discriminatory act occurs." Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S.

---

[8] North Carolina has no state-wide agency authorized "to grant or seek relief from [an unlawful employment] practice" and accordingly is only a "deferral state" under 42 U.S.C. § 2000e5(e)(1) with a 300-day EEOC limitations period purposes in "two very limited circumstances," neither of which applies here. Bratcher v. Pharma. Prod. Dev., Inc., 545 F. Supp. 2d 533, 543 (E.D.N.C. 2008).

618, 621 (2007).⁹  The time a plaintiff is informed of the employment decision triggers the commencement of the limitations period.  Delaware State Coll. v. Ricks, 449 U.S. 250, 261 (1980); Dai, 2003 WL 22113444 at *4 (discriminatory act occurred, "at the latest," when supervisor "formally notified" professor that his appointment would be terminated).  If a claimant fails to file the charge within that time period, the claim is time-barred.  National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002); McCullough v. Branch Banking & Trust Co., 35 F.3d 127, 131 (4th Cir. 1994).

This rule applies even if a plaintiff has resorted to an internal appeal or grievance process: the fact that a decision could be reversed does not toll commencement of the limitations period.  Ricks, 449 U.S. at 261 ("The grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made"); Belton v. City of Charlotte, 175 Fed. App'x 641, 654 (4th Cir. 2006) (unpublished)  (decision to promote someone other than plaintiffs was "final decision," not "provisional recommendation"); Mezu v. Morgan State Univ., 367 Fed. App'x 385, 388-89 (4th Cir. 2010) (unpublished) (letter from college denying promotion constituted the discrete act of failure to promote, irrespective of the pendency of professor's internal appeal).

---

⁹  Ledbetter was superseded in part by the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (codified at 42 U.S.C. § 2000e-5(e)(3) and elsewhere). Because the Act only applies to claims of pay discrimination, Ledbetter (and Ricks, *infra*) remain the controlling law as to other types of discrimination claims. Accord Fulmore v. City of Greensboro, --- F. Supp. 2d ----, 2011 WL 2651106, at *16 n.18 (M.D.N.C. Jul. 6, 2011); Tryals v. AltairStrickland, LP, No. H-08-3653, 2010 WL 743917, at *7 (S.D.Tex. Feb. 26, 2010).

In short, it is the initial employment decision, and not any later affirmance of that decision, that constitutes the adverse employment action. Ricks, 499 U.S. at 261-62. An employer's refusal to undo a decision it has already made is "not a fresh act of discrimination that restarts the clock." Belton at 654 (internal quotations and citations omitted). As such, a plaintiff cannot use a departure from employment that falls within the limitations period to "pull in" a time-barred discriminatory act; "[n]or [can] a time-barred act justify filing a charge concerning a termination that was not independently discriminatory." Morgan, 536 U.S. at 113; see also Mezu, 367 Fed. App'x at 389 (holding that an administrator's "reaffirmation of her prior adverse recommendation . . . did not constitute [an] independently discriminatory act[] commencing the limitation period anew").

Mr. Muir alleges the following discrete unlawful employment acts: removal from his position as Director of the Leadership Institute (2006), denial of tenure and promotion (December 2008), and non-reappointment to his position as an associate professor (December 2008). See Compl. (Doc. #4) ¶¶ 5, 7; EEOC Charge (Doc. #12-4). Mr. Muir also contends, however, that he "was terminated" in May 2010. Compl., (Doc. #4) ¶ 8. In his opposition brief, Mr. Muir elaborates upon this theme, arguing that his dismissal was merely "proposed" until the Committee on Personnel and Tenure rejected his appeal on June 11, 2010; he characterizes the December 2008 decision as merely "some early indication that Plaintiff's employment *may* have been in jeopardy." (Dock. #15 at 3). Even viewing the facts in the EEOC charge in the light most favorable to Mr. Muir, this

position is untenable. The face of the EEOC charge clearly establishes that Plaintiff "was informed" in December 2008 "that [his] request for tenure and promotion was denied and [his] 3 year term appointment . . . would terminate." (Doc. #12-4); see Norman, 286 F. Supp. 2d at 581 (court need not accept as true allegations directly contradicted by exhibits). Mr. Muir's resort to WSSU's internal appeals process does not render the University's December 2008 decision merely provisional. Nor is there any indication that the appellate board's affirmance of WSSU's decision was independently discriminatory.

Mr. Muir, citing Morgan, attempts to invoke the continuing violation doctrine, arguing that "past actions" do not bar an employee "from filing charges about related activities when those actions themselves are timely filed." (Doc. #15 at 3-4). This argument misconstrues Morgan, which squarely holds that "[d]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Id. at 113 (emphasis added); accord Williams v. Giant Food Inc., 370 F.3d 423, 429 (4th Cir. 2004) (holding that continuing violation doctrine does not apply to discrete acts of discrimination, and declining to extend limitations periods for discrete acts of discrimination). And even *if* application of the continuing violation doctrine were appropriate (which it is not), "[e]ven claims alleging a continuous violation must allege a discriminatory act committed within the limitations period." Fulmore, 2011 WL 2651106, at *10; Alexander, 2011 WL 13857, at *7. Mr. Muir, however, has not alleged any discrete discriminatory act committed within the limitations period. To the extent

13

that Mr. Muir alleges that other allegations within the complaint support a hostile work environment claim, this argument will be considered below.

Therefore, even accepting as true all other allegations in the Complaint, it is plain that any discrete discriminatory acts occurred well over 180 days before August 28, 2010, the day Mr. Muir filed his charge of discrimination with the EEOC. Mr. Muir's EEOC charge was therefore untimely, unless equitable principles either toll the limitations period or estop WSSU from asserting the limitations period as a defense.

B.

Like any other statute of limitations, the EEOC limitations period is "subject to waiver, estoppel, and equitable tolling," Zipes, 455 U.S. at 393. Equitable doctrines, however, "are to be applied sparingly," Morgan at 113, so "any resort to equity must be reserved for those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period . . . and gross injustice would result." Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000). Mr. Muir, as the plaintiff, has the burden of demonstrating that an equitable doctrine should relieve him of the statute of limitations. McClamb v. Rubin, 932 F. Supp. 706, 713 (M.D.N.C. 1996). He has not done so here.

Equitable estoppel applies only where plaintiffs are prevented from bringing their claims by the defendant's wrongful conduct. See, e.g., Harris at 330. "An employee's hope for rehire," for example, does not warrant the application of

14

equitable doctrines "absent some employer conduct likely to mislead an employee into sleeping on his rights." Price v. Litton Bus. Sys., Inc., 694 F.2d 963, 965-66 (4th Cir. 1982). Similarly, the availability of an internal appeals process at an employer does not constitute "wrongful conduct" that induces an employee to refrain from filing suit. Belton, 175 Fed. App'x at 653 ("[P]laintiffs' hope that the internal process would remedy the problem is not the type of situation that equitable estoppel is designed to address."); see also Lever v. Northwestern Univ., 979 F.2d 552, 556 (7th Cir. 1992) ("[An employer's provision of] many and varied opportunities for internal review is not the sort of deception that supports equitable estoppel."). Because there is no indication that WSSU has engaged in deception or other wrongful conduct that prevented Mr. Muir from filing his claims, Mr. Muir cannot invoke the doctrine of equitable estoppel to save his claims.

In a similar vein, the pendency of an internal appeals process does not toll the limitations period. Ricks at 261 n.15 ("Mere requests to reconsider . . . cannot extend the limitations periods applicable to the civil rights laws."); Mezu, 367 Fed. App'x at 389. Equitable tolling applies only where "extraordinary circumstances . . . beyond plaintiff's control" prevent him from filing the claims on time. Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (en banc). Mr. Muir has made no showing that extraordinary circumstances apply in this case; nor does it appear from the facts on the face of the Complaint and EEOC charge that any extraordinary circumstances exist.

In sum, Mr. Muir's EEOC charge was not filed within 180 days of any

discrete actionable act of discrimination alleged in his Complaint or EEOC charge. His claims of discrimination and/or retaliation as to his removal from the Director of the Leadership Institute position, the denial of tenure, and his non-reappointment are therefore untimely. Because no equitable doctrine relieves Mr. Muir from application of the limitations period, his claims as to discrete acts of discrimination must be dismissed. See Bratcher, 545 F. Supp. 2d at 543 (dismissing plaintiff's claims as untimely for failure to file with the EEOC within 180 days). Reading the complaint broadly, however, Mr. Muir alleges that WSSU subjected him to a hostile work environment. Because hostile work environment claims rely not on independently discriminatory acts but on a "cumulative effect" of harassing acts, Morgan, 536 U.S. at 115, this claim will be considered separately. See id. at 118 (employee need only meet limitations period as to last hostile act in a "continuous and ongoing" hostile work environment).

C.

Title VII's administrative enforcement scheme, see 42 U.S.C. § 2000e-5, is designed to provide notice to the defending party and promote efficient conciliation between employer and employee. Chacko v. Patuxent Inst., 429 F.3d 505, 510 (4th Cir. 2005). In furtherance of these goals, a plaintiff's access to litigation in federal court is dependent on the plaintiff first exhausting his or her administrative remedies: the court has no subject matter jurisdiction over claims not presented in the first instance to the EEOC. See id.; Davis, 48 F.3d at 138. Therefore, the information provided in a plaintiff's EEOC charge limits the claims that may be

brought in a subsequent Title VII lawsuit. Chacko, 429 F.3d at 509. Though EEOC charges are construed liberally, id., "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained" in the following suit. Evans v. Tech. Applic. & Svc. Co., 80 F.3d 954, 963 (4th Cir. 1996). Accordingly, a claim will be barred if the EEOC charge alleges one type of discrimination (e.g., failure to promote) while the complaint alleges another type (e.g., discrimination in pay). Chacko, 429 F.3d at 509. In the context of a hostile work environment claim, "the allegation of a discrete act or acts" in an EEOC charge "is insufficient" to support a claim in a lawsuit that "subsequently alleges broader pattern of misconduct." Id. at 509, 513 (reversing verdict for plaintiff on hostile work environment claim because it was beyond the scope of the EEOC charge).

Even construing Mr. Muir's EEOC charge broadly, the particulars of the charge are focused entirely on the denial of reappointment, tenure, and promotion. Mr. Muir did not indicate on the EEOC form that his charge encompassed a "continuing violation."[10] And nowhere in the charge does Mr. Muir complain of a hostile work environment or any discriminatory terms or conditions of employment. The sole allegation regarding what could be viewed as a negative condition of employment – a colleague's comment about Mr. Muir's nationality – is not

---

[10] A claimant's failure to check the "continuing action" box in the EEOC charge - while not dispositive - may be probative in considering whether an initial charge encompasses a hostile work environment claim. See id. at 511.

17

complained of independently but is provided in support of a retaliation claim.[11] Though Mr. Muir details some criticism of his work, he describes the feedback as occurring "during the appeals process," as WSSU's stated rationale for the university's decision regarding non-reappointment and denial of tenure.[12] Nothing in the EEOC charge remotely approaches a pattern of discriminatory conduct, let alone an environment "sufficiently severe or pervasive" that a reasonable person would find it to be "abusive." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (affirming 12(b)(6) dismissal of hostile work environment claim where plaintiff did not plead facts that would support such a claim).

In short, Mr. Muir's charge sets forward only discrete acts of alleged discrimination. These allegations "are clearly not allegations of a hostile work environment." Chacko at 511 n.2. Mr. Muir's allegations regarding WSSU's failure to re-appoint him or grant him tenure are not reasonably related to a hostile work environment claim; nor could an investigation regarding a hostile work environment reasonably have been expected to develop from the charge. See Chacko at 509; Morgan at 115 ("Hostile [work] environment claims are different in kind from discrete acts."). Mr. Muir's hostile work environment claim is therefore

---

[11] "[O]ff-hand comments" or "isolated incidents (unless extremely serious)" do not constitute discriminatory changes in the terms or conditions of employment that would support a hostile work environment claim. Jordan v. Altern. Res. Corp., 458 F.3d 332, 339 (4th Cir. 2006) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)); see also Chacko, 429 F.3d at 512 n.3 (noting that isolated confrontations did not rise to level of hostile work environment).

[12] That is, Mr. Muir does not contend in his charge that the criticism of his work constituted a negative term or condition of employment; he mentions the criticism in comparison to other colleagues who allegedly received similar criticism and were nonetheless granted tenure. See EEOC Charge (Doc. #12-4).

beyond the scope of his EEOC charge and is barred. Because the Court does not have jurisdiction over Mr. Muir's hostile work environment claim, it must also be dismissed.[13]

VI.

For the reasons stated above, Mr. Muir's Title VII claims for discrimination, retaliation, and hostile work environment are procedurally barred. Accordingly, WSSU's Motion (Doc. #12) is GRANTED, pursuant to Rule 12(c), and WSSU's Partial Motion to Dismiss (Doc. #7) is DENIED AS MOOT.

This the 2nd day of March, 2012.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge

---

[13] Even if any of the above acts described in the EEOC charge *could* be construed to have raised a hostile work environment claim, the hostile work environment claim, like the claims of discrete discriminatory acts, would be untimely. Mr. Muir does not allege any act that falls within the 180-day limitations period. See Morgan, 536 U.S. at 118 (employee must meet limitations period as to last hostile act in a "continuous and ongoing" hostile work environment).